UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ROSEMARY C. KRUEGER,

                    Plaintiff,

v.                                                      Case No.  5:06-cv-84-Oc-10GRJ

MICHAEL J. ASTRUE,[1] Commissioner of
Social Security,

                    Defendant.

_____/

## ORDER

       Plaintiff appeals to this Court from a final decision of the Commissioner of Social

Security (the "Commissioner") denying her application for disability insurance benefits

and Supplemental Security Income. (Doc. 1.)  The Commissioner has answered (Doc.

3) and both parties have filed briefs outlining their respective positions.  (Docs. 11 & 12.)

For the reasons discussed below, the Commissioner's decision is due to be

**AFFIRMED.**

## I.  PROCEDURAL HISTORY

       Plaintiff protectively applied for Supplemental Security Income on January 25,

2002 (R. 317-320), and for a period of disability and disability insurance benefits on

February 12, 2002. (R. 89-91.)   Plaintiff's application was denied initially, and upon

reconsideration. (R. 63-67, 69-76, 321-322.)  Thereafter, Plaintiff timely pursued her

administrative remedies available before the Commissioner, and requested a hearing

_____

       [1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.
Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted,
therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be
taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42
U.S.C. § 405(g).

before an Administrative Law Judge ("ALJ").  (R. 77.)  The ALJ conducted Plaintiff's administrative hearing on March 24, 2004 (R. 323-355) and issued a decision unfavorable to Plaintiff on June 25, 2004. (R.46-55.)  The Appeals Council denied Plaintiff's request for review on January 6, 2006 (R. 5-7.)  On March 7, 2006, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision

---

[2] <u>See</u> 42 U.S.C. § 405(g).

[3] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] <u>Foote</u>, 67 F.3d at 1560; *accord,* <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past

---

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are

---

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (internal citations omitted).

[17] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[18] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

## III.  SUMMARY OF THE EVIDENCE

Plaintiff was born on August 31, 1951and was fifty-two (52) years old at the time of the decision. (R. 325.) Plaintiff has an eleventh grade education (R. 326) and past relevant work history as a maid and as a cleaning crew leader for a construction company. (R. 109, 125.) Plaintiff contends that she has been unable to work since January 10, 2000 (R. 328) due to neck, back, shoulder, arm, hip and leg pain. (R. 46-47.)

Plaintiff's medical history reveals that she sustained a work-related back and neck injury in December 1999, when she was grabbed by a patient. Plaintiff complained of an acute onset of chronic neck and back pain and was diagnosed with cervical and

---

[19] Walker at 1003.

[20] Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

lumbar strain by Dr. Caban, an occupational therapist, and referred for physical therapy. (R. 210, 182-198.)

Plaintiff was treated by Dr. Caban from February 10, 2000 through April 28, 2000 (R. 199, 203-216) for neck and back pain. Examination revealed a positive spurling's test on the left side and pain with range of motion of her neck. She had diffuse palpable tenderness when her back was palpatated. Plaintiff was instructed to avoid any activities that would place undue stress on her neck. Plaintiff was also instructed by Dr. Caban to avoid frequent bending and twisting at the waist and not to lift anything over five pounds. Dr. Caban's April 28, 2000 progress note states that Plaintiff had no clinical evidence during the period he treated her that would explain her subjective complaints. (R. 199.)

On April 26, 2000, Plaintiff was examined by Troy D. Lowell, M.D., a specialist in orthopaedic surgery, specializing in the spine, neck and scoliosis. Dr. Lowell noted that Plaintiff exhibited "[e]xtreme symptom magnification and/or fabrication" and that he did "not believe there is any treatment necessary for this patient." Dr. Lowell found that Plaintiff was "at maximum medical improvement with 0% impairment" and concluded that "[s]he can return to work full duty." (R. 202.)

Plaintiff was examined by Dr. Oregon Hunter in May 2001. Dr. Hunter's exam revealed minimal rigidity in the left trapezius and left lumbosacral paraspinous muscles. Plaintiff's motor strength was within normal limits in the upper and lower extremities, except for grip strength on the right, which was somewhat impaired. Dr. Hunter found that Plaintiff could "at least be functioning at the light level of lifting and carrying with frequent position changes." (R. 268.) An MRI scan of the lumbar spine was performed in

6

July 2001, which showed disc desiccation with circumferential L4-5 bulging disc and disc protrusion of the lumbosacral motor radiculopathy. Dr. Hunter assessed chronic neck and low back pain syndrome and adjusted Plaintiff's medication.

However, four months later, on September 12, 2001, Dr. Hunter changed Plaintiff's restriction and found that Plaintiff's restrictions "are at the light level of lifting and carrying." (R. 259.) On February 1, 2002, Dr. Hunter again noted that there was no change in Plaintiff's "light level of lifting and carrying restrictions." (R. 256.) Dr. Hunter also found that Plaintiff's restrictions remained unchanged at Plaintiff's May 5, 2002 visit. (R. 252.) Progress notes by Dr. Hunter through March 29, 2002 reveal that Plaintiff continued to complain of neck and back pain and objective evidence showed rigidity and trigger points in the neck and back. While Plaintiff had an intermittent stiff gait, her reflexes were normal and symmetrical in the upper and lower extremities. Dr. Hunter concluded that Plaintiff was not a surgical candidate and that she should continue palliative care. (R. 249.)

Plaintiff was seen for a psychiatric evaluation by Asa L. Godbey, Jr., M.D. on April 18, 2002. (R. 217-219.) Dr. Godbey found that Plaintiff was experiencing an episode of Major Depression, severe without psychotic features. Dr. Godbey noted that Plaintiff's depression appeared to be the result of her injury in December 1999, with subsequent chronic pain and loss of function.

Gary Honickman, Ph.D., performed a consultative mental examination of Plaintiff on May 17, 2002. Dr. Honickman diagnosed Plaintiff with a dysthymic disorder but he did not impose any limitations on Plaintiff's ability to engage in work related activities. (R. 220-221.)

7

Plaintiff was treated by Paula S. Lovett, Ph.D. from June through July 2002. Dr. Lovett found that Plaintiff was suffering from an episode of major depression, severe without psychotic features. Dr. Lovett recommended cognitive behavioral pain management treatment and supportive psychotherapy in an effort to help her manage pain symptoms. Dr. Lovett found that Plaintiff "has no psychological restrictions." (R. 279.)

Plaintiff was then examined by Ramon E. Pino, M.D., a psychiatrist, on August 15, 2002.  The report prepared by Dr. Pino assigned Plaintiff a Global Assessment of Functioning ("GAF") Score of 41, but also notably concluded that Plaintiff "does not have psychiatric restrictions preventing her from working after the injury." (R. 308-315.)

On June 10 2003, Dr. Hunter completed a Physical Capacities Evaluation form regarding Plaintiff's work-related limitations. Dr. Hunter opined that Plaintiff can lift and carry 10 pounds occasionally and five pounds frequently. She can stand and walk for two hours in an eight-hour day and sit for four hours in an eight-hour day. Plaintiff should avoid climbing ladders, bending and/or stooping and reaching overhead. Dr. Hunter also found that Plaintiff should only push and pull occasionally with her upper and/or lower extremities or climb stairs. (R. 303.)

**The ALJ's Decision**

The ALJ found Plaintiff's "allegations regarding her limitations are not totally credible...".(R. 54.) As support for this statement, the ALJ stated that while Plaintiff may experience some back and neck pain with prolonged strenuous lifting, "the record demonstrates she is able to move about in a satisfactory manner. There is no evidence of nerve damage or motor and sensory deficits. In addition, the ALJ stated that Plaintiff

8

"has received very sporadic medical treatment and has required no hospitalization for her alleged chronic pain." Furthermore, the ALJ noted that Plaintiff has "demonstrated the capacity to engage in work-related activities since her alleged onset date of disability, most recently one month ago." The ALJ found that "the limitations to which the claimant testified are somewhat greater than would reasonably be expected from the objective evidence of record." (R. 51.) In addition, the ALJ noted that Plaintiff "acknowledges that she performs light household chores including washing dishes and clothes and dusting. S he attends church and occasionally shops. This clearly indicates that she is capable of engaging in some type of light work activity." The ALJ therefore found that Plaintiff's "subjective allegations of total disability are not credible." (R. 51.)

Accordingly, the ALJ concluded that Plaintiff retains the RFC to engage in light work and can lift and carry twenty pounds occasionally, and ten pounds frequently and she can sit, stand and walk for six hours in an eight-hour day with normal breaks. However, the ALJ found that Plaintiff should not, more than occasionally, balance, stoop, crouch or crawl and should avoid concentrated exposure to work at unprotected heights and around moving or dangerous machinery. The ALJ found the Plaintiff has no severe mental impairments. (R. 52.)

The ALJ then determined whether Plaintiff could perform any of her past relevant work. The ALJ noted that the vocational expert classified Plaintiff's past work as unskilled to skilled and medium to heavy in exertion. Given Plaintiff's RFC, the VE testified that Plaintiff is unable to return to any of her past relevant work. (R. 52.) The ALJ therefore concluded that Plaintiff could not perform her past relevant work and proceeded to consider whether there are other jobs existing in significant numbers in the national

economy that Plaintiff can perform, consistent with her RFC, age, education and work experience.

The ALJ found that Plaintiff is "closely approaching advanced age," has a high school education and "no transferable skills from any of her past relevant work." (R. 52.)

Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

The ALJ asked the VE whether jobs existed in the national economy for a person of Plaintiff's age, education, past relevant work experience and RFC. The VE testified that based upon Plaintiff's age, education, past relevant work experience and RFC that she would be capable of making an adjustment to other work that exists in significant numbers in the national economy. (R. 53.) The ALJ, therefore, concluded that Plaintiff is not under a "disability" as defined in the Social Security Act.

## IV.  DISCUSSION

Plaintiff argues that the Commissioner erred in two respects. First, Plaintiff contends that the ALJ erred by failing to address Plaintiff's need to alternate positions frequently in making the RFC assessment and in failing to include the restriction to frequent position changes in the hypothetical posed to the VE. Second, the Plaintiff argues that the ALJ erred by ignoring Dr. Pino's opinion and then finding that Plaintiff does not have a severe mental impairment.

Turning first to Plaintiff's argument that the ALJ erred by failing to include the need for frequent position changes in his RFC assessment and the ALJ's subsequent failure to include this restriction in the hypothetical posed to the VE, the Plaintiff bases her entire argument upon the statement by Dr. Hunter in one progress note in which Dr. Hunter stated that Ms. Krueger retains the "capacity for light level work activity with frequent position changes." According to Plaintiff, because the ALJ used the phrase "demonstrated" when he addressed this progress note it means  the ALJ "adopted" Dr. Hunter's opinion as to the need for frequent position changes.

Plaintiff's argument fails because the ALJ did not adopt Dr. Hunter's opinion with regard to the need for frequent position changes and instead noted that Dr. Hunter later eliminated the restriction of frequent position changes. There is little question that the ALJ did not "adopt" Dr. Hunter's opinion with regard to the need for frequent position changes. The ALJ stated in unequivocal terms that he gave "little weight to the opinion of Dr. Hunter and [found] that his opinion is not persuasive."[23] Thus, Plaintiff's argument - that the ALJ adopted Dr. Hunter's opinion regarding the need for frequent position changes - is without merit.

In addition to the fact that the ALJ plainly stated that he did not follow Dr. Hunter's opinion, the ALJ explained his reason for doing so. The ALJ found that Dr. Hunter's opinion "is inconsistent with the evidence of record including his own office notes and objective findings."[24]

---

[23] R. 50.

[24] R. 50.

For example, the ALJ noted that  Dr. Hunter had not treated Plaintiff since July 2002, which was of some importance, in view of the fact that Plaintiff's "condition appears to have improved as she has demonstrated the capacity to work for at least a month recently."[25]

 Moreover, the notation by Dr. Hunter with regard to the need for frequent position changes was made on May 16, 2001 at the initial examination. Notably, however, this restriction was eliminated after the initial examination. On September 12, 2001 Dr. Hunter modified his prior restrictions with regard to frequent position changes finding that Plaintiff only had a restriction to "light level lifting and carrying."[26] This restriction - without any mention of a need for frequent position changes - was made on December 5, 2001,[27] February 1, 2002, [28] March 29, 2002,[29] and May 15, 2002.[30] Therefore, Plaintiff's suggestion that the ALJ was required to include the restriction to frequent position changes in the assessment of Plaintiff's RFC is without support.

Because the ALJ did not err by failing to include the restriction to frequent position changes in the RFC,  the ALJ was not required to include this restriction in the hypothetical presented to the VE. Accordingly, Plaintiff's claim of error because the ALJ

---

[25] R. 50.

[26] R. 257.

[27] R. 257.

[28] R. 256.

[29] R. 254.

[30] R. 252.

did not include frequent position changes in the hypothetical to the VE also  is without merit.

Turning to Plaintiff's second argument, Plaintiff contends that the ALJ erred by finding that Plaintiff did not have a severe mental impairment, as  evidenced by the fact that Dr. Pino assessed a GAF score of 41. A GAF score is an assessment of an individual's overall level of functioning. The GAF scale is divided into two components: the first part covers symptom severity, and the second part covers functioning. Each component is given a rating and the final GAF score reflects the *lower* of the two scores. As such, an individual, who has significant symptomology but only moderate impairments in functioning, would receive a lower GAF score reflecting the severe symptomology even though the individual might only have moderate limitations. Thus, while a GAF score is instructive it is not determinative as to whether an individual has functional limitations and, if so, the severity of the functional limitations.

Although Dr. Pino assessed Plaintiff with a GAF score of 41, notably with regard to functional limitations, Dr. Pino found that Plaintiff "does not have psychiatric restrictions preventing her from working..."[31] This same opinion was made by Dr. Pino on two other occasions. After seeing Plaintiff on September 12, 2002, Dr. Pino stated that Plaintiff had "[n]o psychiatric restrictions for work..."[32] and again following a November 11, 2002 visit, Dr. Pino found that Plaintiff had "[n]o psychiatric restrictions for work..."[33]

---

[31] R. 313.

[32] R. 307.

[33] R. 305.

While the ALJ did not specifically mention Plaintiff's GAF score, the ALJ provided a detailed analysis of Plaintiff's mental health history, including a discussion of the opinions of Drs. Lovett and Pino. Appropriately, the ALJ noted as significant the fact that neither Dr. Lovett nor Dr. Pino concluded that Plaintiff had any work restrictions. The ALJ summed up his analysis by stating: "[w]hile the claimant may experience some depression, the record demonstrates that her condition is fairly well controlled with prescribed medication and outpatient therapy. She has required no psychiatric hospitalizations...No treating psychiatrist or psychologist has imposed any limitations on the claimant's ability to engage in work-related activities from a mental standpoint."[34] Accordingly, on this record there was no error by the ALJ in his analysis of Plaintiff's mental impairments and in his conclusion that Plaintiff's depression does not limit her ability to work.

Lastly, relying upon *McCloud v. Barnhart*[35] Plaintiff argues that it is *per se* reversible error where the ALJ fails to address a GAF score. In McCloud - a *per curiam* decision - the Court there found that the ALJ erred for several reasons, one of which was the ALJ's failure to give appropriate consideration to the claimant's GAF score. However, in *McCloud* the key error committed by the ALJ was his erroneous conclusion that a GAF score of 41-50 is reflective of moderate symptoms, when in fact the "DSM"[36] rates this

---

[34] R. 50.

[35] 166 Fed.Appx. 410, 2006 WL 177576 (11th. Cir.  Jan. 25, 2006).

[36] American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994.)

GAF score as including severe symptomology. As a result the *McCloud* Court was unable to determine what weight, if any, the ALJ placed on the GAF score.[37]

In this case, unlike <u>McCloud</u>, the ALJ discussed the lack of any findings of functional limitations in the opinion of the psychiatrist  who had included the GAF score in his report. Thus, notwithstanding the GAF score, with regard to the issue of functional limitations, Dr. Pino expressly concluded that Plaintiff had "no psychiatric restriction for work," a finding that is completely consonant with the ALJ's conclusion that Plaintiff had no restrictions from her mental issues that prevented her from engaging in work-related activities.

Accordingly, for these reasons, the Court concludes that the ALJ did not err by finding that Plaintiff does not have a severe mental impairment and that the ALJ's finding in this regard was supported by substantial evidence.

## V.  <u>CONCLUSION</u>

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 15, 2007.

GARY R. JONES
United States Magistrate Judge

Copies to:
   All Counsel

---

[37] <u>McCloud</u> at 418.